UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------x

RICHARD BROOKS and RYAN TRUNCALI, as Trustees of
PLUMBERS LOCAL UNION NO. 200 WELFARE FUND,
PENSION FUND, VACATION FUND, SUPPLEMENTAL
VESTED ANNUITY FUND, ADDITIONAL SECURITY
BENEFITS FUND and APPRENTICE TRAINING FUND, and
RICHARD BROOKS as Business Manager and Financial
Secretary-Treasurer of PLUMBERS LOCAL UNION NO. 200,
UNITED ASSOCIATION of JOURNEYMEN and
APPRENTICES of the PLUMBING and PIPE FITTING
INDUSTRY of the UNITED STATES and CANADA,

**COMPLAINT**

Civil Action No.

Plaintiffs,

-against-

ACCARDI PLUMBING & HEATING CORP. a/k/a RITEWAY
PLUMBING & HEATING, NICHOLAS ACCARDI, UNITED
CASUALTY AND SURETY INSURANCE COMPANY,
NIRAM, INC, and BERKSHIRE HATHAWAY SPECIALTY
INSURANCE COMPANY,

Defendants.

----------------------------------------------------------------------------x

Plaintiffs, RICHARD BROOKS and RYAN TRUNCALI, as Trustees of PLUMBERS

LOCAL UNION NO. 200 WELFARE FUND, PENSION FUND, VACATION FUND,

SUPPLEMENTAL VESTED ANNUITY FUND, ADDITIONAL SECURITY BENEFITS

FUND and APPRENTICE TRAINING FUND, (hereinafter, collectively, the "Funds"), and

RICHARD BROOKS as Business Manager and Financial Secretary-Treasurer of PLUMBERS

LOCAL UNION NO. 200, UNITED ASSOCIATION of JOURNEYMEN and APPRENTICES

of the PLUMBING and PIPE FITTING INDUSTRY of the UNITED STATES and CANADA

(hereinafter, the "Union"), by and through their attorneys, Archer, Byington, Glennon & Levine,

LLP, as and for their complaint, respectfully allege as follows:

## NATURE OF ACTION

1.      This action arises under Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. §185, and Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1132(a)(2) and 1132(a)(3), and for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2.      Plaintiffs bring this action to recover unpaid fringe benefit contributions and deductions from employee wages, with related relief, and for violation of Sections 515 of ERISA, 29 U.S.C. §1145, and for breach of fiduciary duty and violation of Sections 406 and 404 of ERISA, 29 U.S.C. §§1106 and 1104, by ACCARDI PLUMBING & HEATING CORP. a/k/a RITEWAY PLUMBING & HEATING ("Accardi Plumbing") and NICHOLAS ACCARDI ("Nick Accardi" or the "Individual Defendant"), and for failure to comply with statutory and contractual obligations arising by virtue of Accardi Plumbing's Collective Bargaining Agreement with the Union.

3.      This action includes pendent and supplemental claims against Defendant UNITED CASUALTY AND SURETY INSURANCE COMPANY ("UCS") upon its fringe benefit and union dues surety bond covering the amounts claimed herein ( the "Benefits Bond"), and upon UCS's default in complying with its obligations under the said Benefits Bond, and against Defendants NIRAM, INC. ("Niram") and BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY ("Berkshire Specialty," and together with Niram, the "Project Defendants"), to recover amounts claimed herein for hours of work performed on that certain construction project commonly known as Sinclair Hall Renovation Project, SUNY College of Technology at Farmingdale, State University Construction Fund Project No. 261049-00 (the "Sinclair Hall Project"), against the labor and material payment bond (the "Project Bond") issued

2

by Niram, as Principal, and Berkshire Specialty, as Surety, covering work on the Sinclair Hall Project and under New York State Finance Law §137.

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred upon this Court by Sections 502(e)(1) and (f) of ERISA, 29 U.S.C. §§1132(e)(1) and (f), by Section 301(a) of the LMRA, 29 U.S.C. §185(a), and under 28 U.S.C. §1331 and §1367, and/or 28 U.S.C. §1332 as to UCS and the Project Defendants.

5.      Venue properly lies in this district under Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and under Section 301(c) of the LMRA, 29 U.S.C. §185(c), and pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  Service may be made on Defendants in any district in which they may be found pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2).

## PARTIES AND BACKGROUND

6.      Plaintiffs Richard Brooks and Ryan Truncali are fiduciaries of the Funds within the meaning of Sections 3(21) and 502 of ERISA, 29 U.S.C. §§1002(21) and 1132.

7.      Plaintiff Richard Brooks is Business Manager and Financial Secretary-Treasurer of the Union, a labor organization within the meaning of Section 301(a) of the LMRA, 29 U.S.C. §185(a), which represents employees in an industry affecting commerce as defined in 29 U.S.C. §142.  The Union has its principal office and place of business within the State of New York at 2123 Fifth Avenue, Ronkonkoma, NY 11779.

8.      At all relevant times, Plaintiff Funds are and have been employee benefit welfare plans and employee benefit pension plans as defined in ERISA, 29 U.S.C. §1002(1) and (2), and multiemployer plans within the meaning of ERISA, 29 U.S.C. §§1145 and 1002(37)(A).  The Funds are at all relevant times "Taft Hartley" plans, meeting the requirements of 29 U.S.C.

§186(c)(5). The Funds are administered and have a principal place of business at 2121 Fifth Avenue, Ronkonkoma, NY 11779.

9. Plaintiff Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA, 29 U.S.C. §1132(d)(1). The purpose of the Funds is to receive and collect required fringe benefit contributions and to provide various fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to Collective Bargaining Agreements. The Funds are operated pursuant to the terms of written Agreements and Declaration of Trust (the "Trust Agreements").

10. Upon information and belief, Defendant Accardi Plumbing is a corporation organized and existing under the laws of the State of New York, with a place of business and/or mailing address at 19 Philips Street, Bohemia, NY 11716.

11. Upon information and belief, Defendant Nick Accardi is an individual with a residence and/or mailing address at 105 Highview Drive, Selden, NY 11784.

12. At all relevant times the Accardi Plumbing is and has been an "employer" within the meaning of the National Labor Relations Act, Section 2(2), 29 U.S.C. §152(2), and Sections 3(5) and 515 of ERISA, 29 U.S.C. §§1002(5) and 1145.

13. Upon information and belief, Accardi Plumbing and Nick Accardi (individually and together, the "Accardi Defendants") have at all relevant times acted directly as an employer and/or indirectly in the interests of an employer in relation to the Funds, within the meaning of ERISA, 29 U.S.C. §1002(5).

14. Upon information and belief, at all relevant times the Accardi Defendants exercised discretionary authority or control with respect to the payment or disposition of assets of the Funds, and as such, the Accardi Defendants are fiduciaries within the meaning of ERISA, 29 U.S.C. §1002(21)(A).

4

15.    Upon information and belief, Defendant UCS is a foreign corporation organized and existing under the laws of the State of Nebraska, and is authorized to do business in the State of New York and to enter into and write surety bonds and undertakings in the State of New York, with a principal place of business at 303 Congress Street, Suite 502, Boston, MA 02210.

16.    Upon information and belief, Defendant Niram is a foreign business corporation organized and existing under the laws of the State of New Jersey, and is authorized to conduct business in the State of New York, with a place of business and/or mailing address at 4 East Frederick Place, Cedar Knolls, NJ 07927.

17.    Upon information and belief, Defendant Berkshire Specialty is a foreign corporation organized and existing under the laws of the State of Nebraska, and is authorized to enter into and write surety bonds and undertakings in the State of New York, with a principal place of business at 1314 Douglas Street, Suite 1400, Omaha, NE 68102.

18.    At all relevant times, the Union, as representative of the bargaining unit employees, and Accardi Plumbing, have been party to or otherwise bound by Collective Bargaining Agreements (the "CBA") governing rates of pay, wages, hours, and other conditions of employment of Union members and others employed by Accardi Plumbing within the collective bargaining unit covered by the CBA.  At all times mentioned herein, the CBA has been in full force and effect.

19.    Pursuant to the CBA, Accardi Plumbing agreed and was obligated to remit to the Union amounts deducted from employee's wages for working dues and assessments in accordance with CBA.

20.    Pursuant to the CBA, Accardi Plumbing agreed and was obligated to pay employee benefit contributions to the Funds in agreed amounts and specified percentages of the wages of employees covered by the CBA.

21.     Pursuant to the terms of the CBA, Accardi Plumbing is subject to and bound by the Trust Agreements.  The CBA and Trust Agreements provide, among other things, that an employer delinquent in the payment of fringe benefit contributions shall be liable for all contributions owed, together with interest at the rate of two (2%) percent per month on the unpaid contributions to the date of payment, plus liquidated damages of 20% of the contributions owed, plus attorneys' fees, court costs and legal disbursements incurred for collection.

22.     Upon information and belief, Accardi Plumbing ceased business operations in or about March, 2026.

23.     At the time that Accardi Plumbing ceased its operations, there were fringe benefit contributions and dues and assessments deducted from employees' wages that were due and unpaid as a result of work performed under the CBA, upon information and belief in the known sum of at least $289,770.56 for the period from November, 2025, through March, 2026 ("Claim Period"), plus assessed late payment interest for Accardi Plumbing's untimely contribution payments for February, 2024 up to October, 2025, in the additional sum of $30,955.99, plus late payment interest on the monthly unpaid contributions over the Claim Period, in the additional sum of $18,898.31 through March, 2026, after Accardi Plumbing ceased operations and which continues to accrue, plus liquidated damages of 20% of the unpaid contributions pursuant to the CBA, in the additional sum of $53,438.37, and amounting in all as of cessation of Accardi Plumbing's business operations to $393,063.23, plus attorneys' fees, court costs and legal disbursements incurred for collection, which continue to accrue (the "Bonded Underpayments").

### FIRST CLAIM FOR RELIEF
**(Against UCS as Surety on its Benefits Bond)**

24.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 23 hereof, as if fully set forth herein and with the same force and effect.

25.     Pursuant to the CBA, Accardi Plumbing was required to secure and maintain a

6

surety bond for the benefit of Plaintiffs, conditioned on the faithful payment by Accardi Plumbing of its obligations to Plaintiffs under the CBA, for fringe benefit contributions and dues and assessments for work by its employees under the CBA.

26. On January 27, 2023, Defendant UCS, as compensated corporate Surety, issued its Benefits Bond, undertaking and guarantying payment, jointly and severally with Accardi Plumbing as employer and Bond Principal in accordance with the CBA, and conditioned solely on the faithful payment by Accardi Plumbing of its obligations to Plaintiffs under the CBA on account of required fringe benefit contributions and dues and assessments for work by Accardi Plumbing's employees, to be paid in accordance with the CBA, in the penal sum of up to $60,000.00.

27. On or about February 6, 2026, UCS increased the penal sum of its Benefits Bond and executed its Verification Certificate on that date for its increased penal sum of the Benefits Bond, unconditionally, for an increased penal sum for its Benefits Bond to $200,000.00, in effect and subject to all conditions, agreements, and limitations of the said Benefits Bond. A true copy of the said Benefits Bond, including UCS's Verification Certificate for increase of the penal sum of the Benefits Bond to $200,000.00, is annexed hereto and made a part hereof, as Exhibit "A".

28. Pursuant to the terms of the Benefits Bond, the Bonded Underpayments are all covered by and recoverable against the Benefits Bond, up to the $200,000.00 penal sum of the Benefits Bond.

29. On March 17, 2026, Plaintiffs made due demand to UCS for recovery against the Benefits Bond, and provided notice of Claim against UCS's Benefits Bond.

30. On March 30, 2026, Plaintiffs submitted a sworn Proof of Claim with supporting records to UCS for Plaintiffs' Claim against UCS's Benefits Bond.

7

31.    On April 8, 2026, Plaintiffs submitted additional records and information to UCS to supplement their Proof of Claim against UCS's Benefits Bond.

32.    In response to inquiries and requests for additional information by UCS for Plaintiffs' Claim against the Benefits Bond, Plaintiffs fully cooperated with UCS for the Surety's investigation of Plaintiffs' Claim against its Benefits Bond, including correspondence submitted with additional information and records submitted on behalf of Plaintiffs in response to UCS's questions and requests for information, dated May 12, 2026, May 19, 2026, May 27, 2026, and on June 4, 2026 with a sworn Affidavit in response to questions and requests for information by UCS, all of which conclusively established Plaintiffs' Claim against the Benefits Bond and entitlement to recovery against the Benefits Bond for the Bonded Underpayments, in the amount of the full $200,000.00 penal sum of the Bond.

33.    Despite due demand and Plaintiffs' compliance with all of the terms, requirements, and conditions for recovery against UCS's Benefits Bond in the full amount of the $200,000.00 penal sum of the Bond, the Defendant UCS has failed and refused to issue payment under its Surety Bond beyond the sum of $60,000.00, which was tendered by UCS on May 14, 2026, without prejudice to Plaintiffs' Claim for recovery of the full $200,000.00 penal sum of the Benefits Bond.

34.    Defendant UCS has failed and refused to fully comply with its obligations under its Benefits Bond, and UCS is in default under its said Benefits Bond, to the damage and detriment of Plaintiffs.

35.    By reason of Plaintiffs' claim against a labor and material payment bond against sums covered by the Bonded Underpayments, the amount of the Bonded Underpayments has been reduced by $150,415.82 as of June 24, 2026, attributable to the unpaid fringe benefit contributions and dues and assessments deducted from employees' wages for hours of work on

8

that certain public works project commonly referred to as SUNY Old Westbury Project, and covered by the labor and material payment bond for that Project (the "Old Westbury Payment").

36.     Notwithstanding the Old Westbury Payment, the Bonded Underpayments remain well in excess of the $140,000.00 balance of the penal sum of Defendant UCS's Benefits Bond, which Bonded Underpayments amount to at least $201,257.60 at the present time, plus additional late payment interest after July, 2026 on the unpaid contributions until paid, which have and continue to accrue, plus attorneys' fees, court costs and legal disbursements incurred for collection, all of which continue to accrue against the penal sum of the Benefits Bond.

37.     By reason of the foregoing, Defendant UCS  was liable to Plaintiffs for the Bonded Underpayments up to the full $200,000.00 penal sum of its Benefits Bond, and has failed and refused to make payment to Plaintiffs in the sum of $140,000.00 which has been withheld by UCS unjustifiably and without basis, and UCS is liable to Plaintiffs' for immediate payment under its Benefits Bond in the amount of said $140,000.00 sum, plus interest thereon as of UCS's default in payment under its Benefits Bond, together with Plaintiffs' attorneys' fees and costs in the action.

## SECOND CLAIM FOR RELIEF
### (Against Niram and Berkshire Specialty on their Project Bond)

38.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 37 hereof, as if fully set forth herein and with the same force and effect.

39.     Upon information and belief, during the period November, 2025, through February, 2026, Accardi Plumbing performed work on the Sinclair Hall Project as a subcontractor of the Principal on the Project Bond, Niram, the general contractor for the contracting public authority under the said Project Bond, the State University Construction Fund ("SUCF"), for the performance of work on the Sinclair Hall Project.

40.    Upon information and belief, in performing work as a subcontractor of Niram on the Sinclair Hall Project, Accardi Plumbing failed and refused to pay fringe benefit contributions, and working dues and assessments deducted from employees' wages, for hours of work on the Sinclair Hall Project by Accardi Plumbing's employees under the CBA, upon information and belief in the sum of at least $52,830.73 due and unpaid for work on the Sinclair Hall Project.

41.    Upon information and belief, the Defendant Berkshire Specialty, as compensated surety, furnished its labor and material payment Project Bond covering work and services on the Sinclair Hall Project, Bond No. 47-SUR-300224-01-0005, as required under SUCF's contract(s) with Niram for the performance of work on that Project, and pursuant to §137 of the N.Y. State Finance Law, for the benefit of Plaintiffs and Accardi Plumbing's employees, and pursuant to which Plaintiffs are entitled to recover all unpaid amounts for such Sinclair Hall Project work.  A true copy of the said statutory Project Bond is annexed hereto and made a part hereof, as Exhibit "B".

42.    Upon information and belief, the Defendant Niram, as general contractor on the Sinclair Hall Project and as Principal under the Project Bond, secured and furnished Berkshire Hathaway's labor and material payment Project Bond covering work and services on the Sinclair Hall Project, as required under the SUCF's contract(s) with Niram for the performance of work on the Project, and pursuant to §137 of the N.Y. State Finance Law, for the benefit of Plaintiffs and Accardi Plumbing's employees, and pursuant to which Niram is jointly and severally liable to Plaintiffs together with Berkshire Hathaway, and pursuant to which Plaintiffs are entitled to recover all unpaid amounts for such Sinclair Hall Project work.

43.    Upon information and belief, during the period including November, 2025, through February, 2026, Accardi Plumbing subcontracted with Niram for the performance

of work on the Sinclair Hall Project, and did perform work on the said Project as a direct subcontractor of Niram, and as covered by Defendant Berkshire Specialty's Project Bond.

44. Upon information and belief, in the performance of its work on the Sinclair Hall Project as subcontractor of Niram, Accardi Plumbing employed employees covered by the CBA, and for whom contractually mandated fringe benefit contributions and working dues and assessments were required to be paid to Plaintiffs for the performance of such Project work.

45. Upon information and belief, in the performance of its work on the Sinclair Hall Project as subcontractor of Niram, Accardi Plumbing failed, refused and/or neglected to make full payment of the fringe benefit contributions and working dues and assessments as required by the CBA, for hours of work by Accardi Plumbing's employees on the Sinclair Hall Project over the period November, 2025, through February, 2026, upon information and belief in the sum of at least $52,830.73, which sums remain due and unpaid and despite due demand for payment, and due and timely notice to Niram, as contractor "Principal" on the said Project Bond, and to Berkshire Hathaway, as Surety on the Project Bond, and to SUCF, as contracting public authority under the said Project Bond.

46. Plaintiffs are intended beneficiaries under the Project Bond and pursuant to statute, §137 of the N.Y. State Finance Law, and have duly complied with any and all conditions precedent for recovery against the Project Bond for work on the Sinclair Hall Project, and neither Accardi Plumbing nor any other party, including Defendants Niram and Berkshire Specialty, have made payment of the amounts owed for such work, upon information and belief in the sum of at least $52,830.73, and said sums remain due and unpaid.

47. Despite due demand and compliance with all of the terms, requirements, and conditions of Defendant Berkshire Specialty's Project Bond for recovery by Plaintiffs, the

11

Project Defendants have failed and refused to comply with their obligations under the Project Bond and pursuant to statute, and each of Niram and Berkshire Specialty are in default under the said Project Bond, to the damage and detriment of Plaintiffs.

48.     Despite due demand and compliance with all of the terms, requirements, and conditions of Defendant Berkshire Specialty's Project Bond, and Plaintiffs' timely and complete notice of claim to Niram and Berkshire Specialty and establishing Plaintiffs' unconditional entitlement to recovery against the said Project Bond, the Project Defendants have failed and refused to comply with their obligations under the Project Bond and pursuant to statute, and each of Niram and Berkshire Specialty are in default under the said Project Bond, to the damage and detriment of Plaintiffs.

49.     By reason of the foregoing, Niram and Berkshire Specialty are liable, jointly and severally, to Plaintiffs for all unpaid fringe benefit contributions and working dues and assessments that remain due and unpaid for work performed by Accardi Plumbing's employees on the Sinclair Hall Project, upon information and belief in the sum of at least $52,830.73, plus interest thereon as of each of the Project Defendants' default in payment under the said Project Bond, together with Plaintiffs' attorneys' fees and costs in the action.

### THIRD CLAIM FOR RELIEF
### (Against Accardi Plumbing Under §301 of the LMRA)

50.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 49 hereof, as if fully set forth herein and with the same force and effect.

51.     Pursuant to the CBA, Accardi Plumbing is obligated to remit to the Union amounts deducted from employee's wages for working dues and assessments in accordance with CBA.

52.     By deducting specified amounts from employees' wages for working dues and assessments, and failing to remit said amounts to the Union in payment of Accardi Plumbing's

12

wage deductions from employees' wages, Accardi Plumbing has breached the CBA and its legal obligations to its employees, to the detriment of its employees and the Union.

53.    Upon information and belief, for the period from in or about November, 2025, through March, 2026, there are presently due and unpaid from Accardi Plumbing working dues and assessments deducted from its employees' wages for work covered by the CBA, in the sum of at least $10,367.42, and Accardi Plumbing is liable to the Union for such sum and on behalf of its employees, plus interest and the attorneys fees and legal costs of collection.

54.    Pursuant to the CBA, Accardi Plumbing agreed and was obligated to pay contributions for the Plumbing Industry Promotion Fund, in agreed amounts based on the hours of work by its employees covered by the CBA.

55.    By failing to remit the required Plumbing Industry Promotion Fund contributions to the Funds in accordance with the CBA, Accardi Plumbing has breached the CBA and its legal obligations, to the detriment of Plaintiffs.

56.    Upon information and belief, for the period from in or about November, 2025, through March, 2026, there are presently due and unpaid from Accardi Plumbing required contributions under the CBA for the Plumbing Industry Promotion Fund, in the sum of at least $3,483.52, and Accardi Plumbing is liable to the Funds for such sum and on behalf of the Plumbing Industry Promotion Fund in accordance with the CBA, plus interest and the attorney's fees and legal costs of collection.

57.    Pursuant to the CBA, Accardi Plumbing agreed and was obligated to pay employee benefit contributions to the Funds in agreed amounts and specified percentages of the wages of employees covered by the CBA.

58.    Pursuant to the CBA, in the event of its failure to pay employee benefit contributions to the Funds as and when required pursuant to the CBA, Accardi Plumbing agreed

and was obligated to pay interest on all unpaid contributions at the rate of two (2%) percent per month up to the date of payment, plus liquidated damages in an amount equal to the interest on such unpaid contributions, or 20% of the contributions owed, whichever is greater, plus attorneys' fees, court costs and legal disbursements incurred for collection.

59.    By failing to pay over to the Funds its employee benefit contributions required by the CBA, and by failing to pay the required interest and liquidated damages on such unpaid employee benefit contributions, Accardi Plumbing has breached the CBA and its legal obligations, to the detriment of its employees and Plaintiffs.

60.    Upon information and belief, for the period from in or about November, 2025, through March, 2026, there are presently due and owing from Accardi Plumbing unpaid employee benefit contributions required to be paid to the Funds under the CBA, in the sum of at least $125,503.67, plus $8,464.62 in accrued interest under the CBA through July, 2026, plus $53,438.37 in liquidated damages under the CBA, amounting in all to $187,406.66 through July, 2026, and Accardi Plumbing is liable to the Funds for such sum in accordance with the CBA, plus additional late payment interest after July, 2026 on the unpaid contributions until paid in full, plus the attorneys fees and legal costs of collection.

61.    By reason of the foregoing, Accardi Plumbing is liable to Plaintiffs for violation of the CBA, in the sum of at least $201,257.60 due and unpaid, plus interest and the attorneys fees and legal costs of collection.

## FOURTH CLAIM FOR RELIEF
### (Unpaid Contributions Under ERISA Against Accardi Plumbing)

62.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 61 hereof, as if fully set forth herein and with the same force and effect.

63.    Section 515 of ERISA, 29 U.S.C. §1145, requires every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the

14

terms of a collectively bargained agreement, to make such contributions in accordance with the terms and conditions of such plan or such agreement.

64. The Funds are multiemployer plans as defined in Section 3(37)(A) of ERISA, 29 U.S.C. §1002(37)(A).

65. By virtue of the CBA, Accardi Plumbing is statutorily required to make contributions to the Funds pursuant to Section 515 of ERISA, 29 U.S.C. §1145.

66. The failure, refusal, or neglect of Accardi Plumbing to make the required contribution payments to the Funds constitutes a violation of Accardi Plumbing's statutory duties, and has injured the Funds by delaying the investment of contributions and causing unnecessary administrative expense to the Funds.

67. Section 502 of ERISA, 29 U.S.C. §1132, provides that upon a finding of an employer violation of Section 515 of ERISA, 29 U.S.C. §1145, the Court shall award to a Plaintiff fund the unpaid fringe benefit contributions, plus interest on the unpaid amounts computed at a rate set forth in the plan, or if none, as set forth in the United States Internal Revenue Code [26 U.S.C. §6621], plus an additional amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the CBA and the Trust Agreements up to the sum of twenty percent (20%) of the unpaid contributions, together with reasonable attorneys' fees, costs and disbursements incurred in the action.

68. As such, pursuant to ERISA, 29 U.S.C. §1132, the CBA and the Trust Agreements, Plaintiffs are entitled to an award against Accardi Plumbing of all unpaid and unreported fringe benefit contributions required to be paid to the Funds by virtue of work performed by its employees, together with interest on the unpaid contributions, plus an additional amount equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages in the amount of twenty (20%) percent of the unpaid contributions, amounting in all to

$187,406.66 through July, 2026, plus additional late payment interest after July, 2026 on the unpaid contributions until paid in full, plus the attorneys fees and legal costs of collection.

## FIFTH CLAIM FOR RELIEF
### (Injunction for Individual Liability Against Nick Accardi as Fiduciary)

69.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 68 hereof, as if fully set forth herein and with the same force and effect.

70.     Upon information and belief, as a result of work performed by or on behalf of Accardi Plumbing under the CBA, Accardi Plumbing and/or Nick Accardi received sums of money for construction projects covering work performed under the CBA for payment of the wages and benefits of employees furnishing labor on the said construction projects, and, upon information and belief, fringe benefit contributions and dues and assessments remain due and unpaid for such work.

71.     Upon information and belief, the CBA was executed and entered into on behalf of Accardi Plumbing by the Individual Defendant Nick Accardi in his capacity as President and/or as principal officer of Accardi Plumbing.

72.     Upon information and belief, Nick Accardi is now, and was at all relevant times, directly responsible for the day to day management of the business and affairs of Accardi Plumbing.

73.     Upon information and belief, at all relevant times, Individual Defendant Nick Accardi completely owned and/or controlled and dominated the affairs of Accardi Plumbing, and/or carried on the business of Accardi Plumbing for his own personal benefit.

74.     Upon information and belief, at all relevant times, the Individual Defendant had managerial discretion and control over Accardi Plumbing, and made all decisions concerning payments by Accardi Plumbing.

16

75.    Upon information and belief, at all relevant times, the Individual Defendant, as controlling shareholder and/or principal corporate officer of Accardi Plumbing, exercised complete control over the labor relations and finances of Accardi Plumbing, and was at all relevant times, and is now, directly responsible for payment of the fringe benefit contributions and dues and wage deductions required to be paid under the CBA and the Trust Agreements.  As such, the Individual Defendant Nick Accardi has at all relevant times been possessed of the power, authority, means, and responsibility to cause Accardi Plumbing to meet its obligations to the Funds.

76.    Upon information and belief, at all relevant times, the Individual Defendant determined if, when, and which creditors of Accardi Plumbing would be paid, and determined when and if working dues and assessments deducted from employees' wages would be paid to the Union as required by the CBA, and how much, and exercised discretionary authority and control over working dues and payroll deductions which were the property of the Union and/or its members employed by Accardi Plumbing.

77.    Upon information and belief, at all relevant times, the Individual Defendant determined if, when, and which creditors of Accardi Plumbing would be paid, and determined when and if fringe benefit contributions required to be paid for work by Accardi Plumbing's employees under the CBA would be paid to the Funds and how much, and exercised discretionary authority and control over fringe benefit contributions and wage deductions due and owing to the Funds and/or for the benefit of Accardi Plumbing's bargaining unit employees, who are participants of the Funds.

78.    Pursuant to the Trust Agreements, title to all monies due and owing to the Funds are vested in and remain exclusively in the Trustees of the Funds, and outstanding and withheld contributions constitute Plan assets.

79. Upon information and belief, the Individual Defendant Nick Accardi has commingled construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages, with Accardi Plumbing's general assets, and used such proceeds and/or plan assets and/or dues and fringe benefit deductions to pay other creditors of Accardi Plumbing, rather than forwarding those monies to Plaintiffs.

80. Upon information and belief, while causing Accardi Plumbing to retain construction project proceeds and/or Plaintiffs' assets, and/or dues and fringe benefits deducted from employees' wages, the Individual Defendant diverted those assets to his own personal use and/or benefit.

81. By reason of the foregoing, the Individual Defendant is a fiduciary within the meaning of ERISA, under the common law, and by virtue of Article 3A of the New York Lien Law, with respect to any and all construction project proceeds and/or plan assets and/or wage deductions that he failed to timely pay over to Plaintiffs.

82. By reason of the foregoing, Plaintiffs are entitled to judgment declaring and determining that the Individual Defendant Nick Accardi was at all relevant times a fiduciary under ERISA, the common law, and by virtue of Article 3A of the New York Lien Law, and that he unlawfully withheld and retained fringe benefit contributions due and owing to Plaintiffs, and converted dues and wage deductions withheld from employees' wages, and that the Individual Defendant is liable to Plaintiffs therefor.

83. By reason of the foregoing, Plaintiffs are entitled to judgment enjoining the Individual Defendant from any further use, control, and/or disposition of, and imposing a constructive trust over, all such diverted construction project proceeds and/or plan assets and/or dues and wage deductions withheld from employees' wages, whether in the hands of the Individual Defendant, Accardi Plumbing, or any transferee thereof.

## SIXTH CLAIM FOR RELIEF
### (Against Accardi Defendants for Breach of Fiduciary Duty)

84. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 83 hereof, as if fully set forth herein and with the same force and effect.

85. Pursuant to ERISA, 29 U.S.C. §1104(a)(1)(A), fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and "defraying reasonable administrative expenses."

86. Upon information and belief, the Individual Defendant has unlawfully diverted to himself and/or to his own or Accardi Plumbing's other creditors, construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages, which are rightfully the property of Plaintiffs and the Funds' participants and beneficiaries.

87. By withholding the Plaintiffs' assets and/or dues and fringe benefits deducted from employees' wages, and/or by diverting construction project proceeds, the Individual Defendant received and retained for his own personal use and benefit, monies which are rightfully assets of the Plaintiffs, in violation of ERISA, 29 U.S.C. §1104(a)(1)(A), and under common law.

88. By withholding plan assets and/or dues and fringe benefits deducted from employees' wages, and/or by diverting construction project proceeds, the Individual Defendant failed to abide by the documents and instruments governing the Funds in violation of ERISA, 29 U.S.C. §1104(a)(1)(D).

89. By withholding plan assets and converting dues and fringe benefits deducted from employees' wages, and/or by diverting construction project proceeds, the Individual Defendant is individually and personally liable, jointly and severally with Accardi Plumbing, for the violations of ERISA described above and for conversion under the common law, and for violation of his

fiduciary obligations owed to Plaintiffs and the Funds' participants and beneficiaries under ERISA, the common law, and by virtue of Article 3A of the New York Lien Law.

90.    By reason of the foregoing, the Individual Defendant and Accardi Plumbing are liable to Plaintiffs, jointly and severally, for all diverted construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages which remain unpaid, as well as interest, liquidated damages, and the costs and fees of collection, and to restore to the Plaintiffs any profits that the Accardi Defendants made through use, conversion, and retention of diverted construction project proceeds, plan assets and/or dues and fringe benefits deducted from employees' wages, pursuant to Section 409 of ERISA, 29 U.S.C. §1109, under the common law, and his fiduciary obligations owed to Plaintiffs and the Funds' participants and beneficiaries.

## SEVENTH CLAIM FOR RELIEF
### (Prohibited Transactions Against Accardi Defendants as Fiduciary)

91.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 90 hereof, as if fully set forth herein and with the same force and effect.

92.    Pursuant to ERISA, 29 U.S.C. §1106(a)(1)(A) and (B), it is unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit. Absent an exemption, ERISA makes it unlawful for fiduciaries to deal with plan assets for their personal account, 29 U.S.C. §1106(b)(1)-(3).

93.    At all relevant times herein, the Accardi Defendants were parties in interest with respect to the Plaintiff Funds within the meaning of ERISA, 29 U.S.C. §1002(14).

94.    By diverting construction project proceeds and/or withholding plan assets and/or converting dues and fringe benefits deducted from employees' wages from the Plaintiff Funds, the Accardi Defendants dealt with plan assets in their own interest and/or exchanged property or

extended credit from plan assets for their own use and benefit in violation of ERISA, 29 U.S.C. §1106(a) and (b).

95.    As a result of the breaches of fiduciary duty described above, the Accardi Defendants are liable to Plaintiffs, jointly and severally, for all diverted construction project proceeds and/or plan assets and/or converted dues and fringe benefits deducted from employees' wages which remain unpaid, as well as interest, liquidated damages, and the costs and fees of collection, and to restore to the Plaintiffs any profits that the Accardi Defendants made through use and retention of diverted construction project proceeds and/or plan assets and/or converted dues and fringe benefits deducted from employees' wages, pursuant to Section 409 of ERISA, 29 U.S.C. §1109, under the common law, and their fiduciary obligations owed to Plaintiffs and the Funds' participants and beneficiaries.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, as follows:

(a)    On the First Claim for Relief, against UCS in favor of Plaintiffs, for $140,000.00 due and unpaid as the remaining balance of the penal sum of the Benefits Bond payable to Plaintiffs under UCS's Benefits Bond, plus interest thereon from the date of Defendant UCS's default in making full payment under its Benefits Bond, pursuant to the Benefits Bond and under N.Y. Gen. Obl. L. §7-301, together with recovery of Plaintiffs' attorneys' fees and costs in the action;

(b)    On the Second Claim for Relief, against Niram and Berkshire Specialty, jointly and severally in favor of Plaintiffs, for all fringe benefit contributions and working dues and assessments that remain due and unpaid for work performed by Accardi Plumbing's employees on the Sinclair Hall Project, in the sum of at least $52,830.73, plus interest thereon from the date of each of the Project Defendants' default in payment under the Project Bond, pursuant to the

21

said Project Bond and under N.Y. Gen. Obl. L. §7-301 and N.Y. State Fin. L. §137, together with recovery of Plaintiffs' attorneys' fees and costs in the action;

(c)     On the Third Claim for Relief, against Accardi Plumbing for violation of its CBA, (i) in favor of the Union in the sum of at least $10,367.42, plus interest and the attorneys fees and legal costs of collection, and (ii) in favor of the Funds and on behalf of the Plumbing Industry Promotion Fund, in the sum of at least $3,483.52, plus interest and the attorneys fees and legal costs of collection; and (iii) in favor of the Funds for all unpaid employee benefit contributions required to be paid to the Funds under the CBA, in the sum of at least $125,503.67, plus $8,464.62 in accrued interest under the CBA through July, 2026, plus $53,438.37 in liquidated damages under the CBA, amounting to $187,406.66 through July, 2026, and amounting in all to at least $201,257.60 due and unpaid as of July, 2026, plus additional late payment interest after July, 2026 on the unpaid contributions until paid in full, plus the attorneys fees and legal costs of collection, and that Accardi Plumbing is liable to Plaintiffs therefor;

(d)     On the Fourth Claim for Relief, against Accardi Plumbing pursuant to ERISA, 29 U.S.C. §1132 (g)(2), the CBA and the Trust Agreements, an award of all unpaid and unreported fringe benefit contributions required to be paid to the Funds by virtue of work performed by employees of Accardi Plumbing, together with interest on the unpaid contributions, plus an additional amount equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages in the amount of twenty (20%) percent of the unpaid contributions, amounting in all to $187,406.66 through July, 2026, plus additional late payment interest after July, 2026 on the unpaid contributions until paid in full, plus the attorneys fees and legal costs of collection, and that Accardi Plumbing is liable to the Funds therefor;

(e)     On the Fifth Claim for Relief, entry of judgment declaring and determining that the Individual Defendant Nick Accardi was at all relevant times a fiduciary under ERISA, the

22

common law, and by virtue of Article 3A of the New York Lien Law, and that he unlawfully withheld and retained fringe benefit contributions due and owing to Plaintiffs, and converted dues and wage deductions withheld from employees' wages, and that the Individual Defendant is liable to Plaintiffs therefor, and enjoining the Individual Defendant from any further use, control and/or disposition of, and imposing a constructive trust over, all such diverted construction project proceeds and/or plan assets and/or converted dues and fringe benefits deducted from employees' wages, whether in the hands of the Individual Defendant, Accardi Plumbing, or any transferee thereof;

(f)     On the Sixth Claim for Relief, against the Accardi Defendants, jointly and severally, for all diverted construction project proceeds and/or plan assets and/or converted dues and fringe benefits deducted from employees' wages which remain unpaid, as well as interest, liquidated damages, and the costs and fees of collection, and to restore to Plaintiffs any profits that any of such Defendants made through use and retention of such diverted construction project proceeds and/or plan assets and/or converted dues and fringe benefits deducted from employees' wages, in violation of ERISA, 29 U.S.C. §1104(a)(1)(A), under the common law, and their fiduciary obligations owed to Plaintiffs and the Funds' participants and beneficiaries, and that the Accardi Defendants, jointly and severally, are liable to Plaintiffs therefor;

(g)     On the Seventh Claim for Relief, against the Accardi Defendants, jointly and severally, for all diverted construction project proceeds and/or plan assets and/or converted dues and fringe benefits deducted from employees' wages which remain unpaid, as well as interest, liquidated damages, and the costs and fees of collection, and to restore to Plaintiffs any profits that the Accardi Defendants made through use and retention of diverted construction project proceeds and/or plan assets and/or converted dues and fringe benefits deducted from employees' wages, pursuant to Section 409 of ERISA, 29 U.S.C. §1109, under the common law, and their

fiduciary obligations owed to Plaintiffs and the Funds' participants and beneficiaries, and that the

Accardi Defendants, jointly and severally, are liable to Plaintiffs therefor; and

(h)    Directing such other and further relief as this Court deems just and proper.

Dated: Melville, New York
July 29, 2026

ARCHER, BYINGTON, GLENNON & LEVINE, LLP

By:_____*/s/ John H. Byington III*_____
        John H. Byington III
Attorneys for Plaintiffs
534 Broadhollow Road, Suite 430
Melville, New York 11747-9064
631- 249-6565

791787